UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERICK BOSTROM AND PEGGY BOSTROM,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>PNC BANK, N.A., a Pennsylvania Corporation, dba PNC MORTGAGE; NATIONAL CITY MORTGAGE, a division of NATIONAL CITY BANK; PIONEER TITLE COMPANY OF ADA COUNTY, dba PIONEER LENDER TRUSTEE SERVICES; and DOES 1-25, inclusive, AND DOES I through X inclusive,<br><br>　　　　　　　Defendants. | Case No. 1:11-cv-00594-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

The Court has before it Defendants PNC Mortgage and PNC Bank, NA's Motion for Judgment on the Pleadings,[1] filed on February 15, 2012, and Plaintiffs Erick and Peggy Bostrom's Motion to Strike, Continue, or Convert Defendants''s Motion for

---

[1] Defendants have identified themselves as "Defendant PNC Mortgage, a division of PNC Bank, National Association, erroneously named as "PNC Bank, N.A. dba PNC Mortgage" and PNC Bank, National Association, as successor by merger to National City Mortgage ("PNC")." (Dkt. 12.)

**REPORT AND RECOMMENDATION - 1**

Judgment on the Pleadings to Motion for Summary Judgment, filed on March 1, 2012. The Bostroms' motion is accompanied by a motion for judicial notice.[2] The parties have briefed the motions and they are now ripe for the Court's consideration. Having reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and the record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d).

For the reasons set forth below, the Court will recommend that Defendants' motion be granted, and that this matter be remanded to the district court for the State of Idaho because the Court lacks jurisdiction over Plaintiffs' remaining state law claims. Consequently, the Court did not consider the motion for judicial notice or the motion to strike.

## FACTS[3]

The Bostroms filed a complaint in Idaho state court on November 9, 2011, alleging a litany of grounds to invalidate their mortgage and prevent the Bank from proceeding with foreclosure.

In October of 2007, the Bostroms obtained a mortgage loan on their residence from National City Mortgage in the principal amount of $310,365.00. Pursuant to a

---

[2] The parties stipulated for entry of a non-monetary judgment as between Plaintiffs and Defendant Pioneer Title Company. According to the terms of the stipulation, Pioneer Title agrees to be bound by any final judgment of the Court and will not be required to respond to the pleadings or otherwise take any action in this matter. (Dkt. 18.)
[3] The following facts are taken from the Complaint (Dkt. 1-2), the attached exhibits to the Complaint, and documents of public record attached to the Bank's Motion to Dismiss, of which the Court takes judicial notice.

**REPORT AND RECOMMENDATION - 2**

promissory note (the "Note"), the Bostroms were obligated to pay interest only payments in monthly installments of $1,842.79 for the first ten years, and thereafter the amount of $2,429.60, which sum included principal and interest, for a period of twenty years. After thirty years of monthly payments, the Note would mature. The Note expressly stated that "Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Failure to pay according to the terms of the Note constituted a default.

The Note was secured by a Deed of Trust on the Bostrom's residential real property, which identified the Lender as National City Mortgage, a division of National City Bank, and designated Title One as the Trustee.[4] The Deed of Trust indicated that payments under the Note would be deemed received by Lender when received at the location designated in the Note. Acceptance by Lender of amounts less than the amounts due under the Note were deemed not to be a waiver of or preclude the exercise of any right or remedy Lender was entitled to. Finally, the Deed of Trust contained a notice that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument." If the loan servicer changed, the Bostroms were to be given notice of the new address where to send payments. Upon a default, Lender

---

[4] Mortgage Electronic Registration System, Inc. (MERS) is not designated in the Deed of Trust, and is not named anywhere in the loan documents or in the Complaint.

**REPORT AND RECOMMENDATION - 3**

would cause the Trustee to execute written notice and commence foreclosure proceedings according to applicable law.

In late 2008, National City Corporation merged into the PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of the PNC Financial Services Group, Inc. In November of 2009, National City Bank merged into PNC Bank, N.A. Defendant PNC Mortgage is a division of Defendant PNC Bank, N.A., ("PNC Bank" or "the Bank") and claims to be the current holder of the Note. However, the Bostroms allege that Fannie Mae is the beneficial owner of the Bostroms' Note.

In late 2009, the Bostroms began having difficulty making their mortgage payment. On or about June 1, 2009, the Bostroms prepared and submitted to National City Mortgage a Home Affordable Modification Program ("HAMP") Hardship Affidavit in an effort to reduce their monthly payment of $2,314.32.[5] They allege that because Fannie Mae is the beneficial owner of the Note, National City Mortgage and PNC Bank are required to participate in HAMP.

On September 3, 2009, National City Mortgage (now identified as "a part of PNC") sent the Bostroms a "customized Home Affordable Modification Trial Period Plan." The first paragraph stated "You may qualify for a Home Affordable Modification Trial Period Plan," and "if you qualify . . . and comply with the terms of the Trial Period Plan, we will modify your mortgage loan." The letter further stated "You may not qualify for this loan modification program," and "if you do not qualify for a loan modification,

---

[5] This amount presumably includes escrow charges for property taxes and insurance, because the payment amount is $471.53 more than the interest only payment of $1,842.79.

**REPORT AND RECOMMENDATION - 4**

we will work with you to explore other options available to you." The letter instructed the Bostroms to provide information, and to let the bank know they accepted the "offer."

During the trial period, the letter informed the Bostroms that the bank would confirm their income and eligibility, and "will finalize your modified loan terms and send you a loan modification agreement . . . which will reflect the terms of your modified loan." The notice indicated that any past due amounts at the end of the trial period, including unpaid interest, real estate taxes, insurance, or other assessments, would be added to the loan balance. But, if the Bostroms fulfilled the terms of the trial period, "including, but not limited to, making the trial period payments, [the bank] will waive ALL unpaid late charges at the end of the trial period."

The second part of the letter included an acknowledgment that the Bostroms "understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless" the Bostroms met all conditions required for modification, they received a fully executed copy of a modification agreement, and the modification effective date has passed. The "trial period plan" would begin on October 1, 2009.[6]

The Bostroms complied with the Bank's instructions. Based upon the documentation submitted, PNC Bank reduced their payment amount. On September 22, 2009, the Bostroms received a letter from National City Mortgage thanking them for their

---

[6] The Bostroms in their Complaint make several references to the letters they received from the Bank, which they attached to the Complaint. The Court has taken the language and quotes directly from the documents themselves, rather than the characterizations of those documents described in the Complaint.

**REPORT AND RECOMMENDATION - 5**

first trial payment, and providing them with temporary coupons for two future payments due on December 1, 2009, and January 1, 2010, in the amount of $1,209.98.

Commencing on October 10, 2009, the Bostroms made each of the consecutive trial period payments in the amount of $1,209.98, and continued to pay that amount each month thereafter until May of 2011, using PNC's automated withdrawal service.

In March of 2010, the Bostroms received a letter from PNC Bank stating that "the modification was being 'stopped' due to incomplete financial information." Upon receiving the letter, Mrs. Bostrom called to inquire and was advised that "the modification was still under review, that no further paperwork was required, and that the Bostroms should not worry." Mrs. Bostrom was instructed to continue making the modified payment amount of $1,209.98, which they continued to do.

In September of 2010, the Bostroms were advised by PNC Bank that they were behind by seven payments, because the modified payments had been "'stopped' in March of 2010." The Bostroms were advised that the original monthly payment of $2,314.32 had been due each month since March of 2010. The Bostroms allege PNC Bank never provided the Bostroms with notice of the change, and that PNC Bank continued to accept the modified payment of $1,209.98 without ever asking the Bostroms for additional documentation.

Also in September of 2010, PNC Bank sent the Bostroms another modification proposal and demanded payment of $14,000.00 in back payments. The Bostroms sent in additional materials, and followed up with PNC Bank representatives on November 17,

**REPORT AND RECOMMENDATION - 6**

2010, who allegedly gave Mrs. Bostrom inconsistent information concerning the handling of the Bostrom's loan.

In January of 2011, the Bostroms received correspondence from PNC Bank indicating they were in default, and that they had made no payments on the Note since June of 2010, even though the Bostroms had made each $1,209.98 payment due on time. In February of 2011, the Bostroms received two different Modification Plans proposing different trial period plan payments. The first Trial Period Plan Notice, dated February 28, 2011, indicated the Bostroms "may be eligible for a modification offered by Fannie Mae (the owner of your loan)." To accept the offer, the Bostroms were instructed to make their first monthly "trial period plan payment" of $1,922.47 by February 1, 2011, which was thirty-three days before the Bostroms actually received the letter dated February 28, 2011. The second Trial Period Plan Notice was identical in all respects save the date and amounts. The second Notice, dated February 23, 2011, indicated the first trial period plan payment of $2,614.98 was due by February 1, 2011, twenty-six days before the Bostroms received the letter.

On or about June 28, 2011, the Bostroms received a letter from PNC Mortgage informing them their loan was past due, and returning the check they had sent for $1,209.98[7] because the amount received was not sufficient to reinstate their loan from default. On or about June 30, 2011, the Bostroms received a letter informing them their loan had been referred for foreclosure. On or about July 22, 2011, the Bostroms received

---

[7] The Court presumes this is the payment the Bostroms sent for June of 2011. However, it is not clear from the letter which payment this may have been.

**REPORT AND RECOMMENDATION - 7**

a notice of Trustee's Sale by mail, which indicated Pioneer Title, as trustee, would be conducting a trustee's sale on November 22, 2011, because of default described as the failure to pay the monthly payment due August 1, 2010, and thereafter.

## ANALYSIS

1.     **Standard of Law**

Defendants have moved for a judgment on the pleadings, asserting the Bostroms have raised no material facts or issues of law upon which they can prevail on their claims as a matter of law. The motion is made pursuant to Fed. R. Civ. P. 12(c). In particular, Defendants contend that the Bostroms' claims, which are predicated on the Making Home Affordable Act ("HAMP"), cannot survive because HAMP does not create a private right of action for borrowers against lenders and servicers. Even if HAMP did create a private right of action, Defendants contend that there are no facts plead which establish the alleged causes of action pled in the Complaint. The Bostroms oppose the motion, asserting that they should be given an opportunity to convert the motion into one for summary judgment considering Defendants have introduced facts outside of the Complaint, and consideration of those facts would raise a triable issue of material fact under Fed. R. Civ. P. 56.

Motions for a judgment on the pleadings are governed by Fed. R. Civ. P. 12(c). A party may move for a judgment on the pleadings at any point after the pleadings close. Fed. R. Civ. P. 12(c). The standard for deciding a motion under Rule 12(c) is virtually identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). Judgment on the pleadings may be granted only when it appears beyond doubt

**REPORT AND RECOMMENDATION - 8**

that the claiming party can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir.1997) (internal quotations and citations omitted). In other words, a judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *See Honey v. Distelrath*, 195 F.3d 531 (9th Cir.1999) (citing *Nelson v. City of Irvine*, 143 F.3d 1196 (9th Cir.1998); *see also Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir.1999). Thus, the narrow question presented by Defendants' motion is whether Plaintiffs' claims failed to plead facts that, even if taken as true, fail to state valid claims for which relief may be granted.

  An additional consideration is present here, considering the Bostroms assert jurisdiction on the grounds that a federal question is presented under the Fair Debt Collection Practices Act. This matter was removed from state district court to this Court on December 2, 2011. The Court of Appeals for the Ninth Circuit strictly construes the removal jurisdiction statutes against removal. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979). Federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Subject matter jurisdiction exists if the case arises under the Constitution, laws, or treaties of the United States—a federal question. 28 U.S.C. § 1331. A defendant may remove a civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Section 1447 governs this Court's procedure after removal. Section 1447(c) provides that "[i]f at any time before final judgment it appears

**REPORT AND RECOMMENDATION - 9**

that the district court lacks subject matter jurisdiction, the case shall be remanded." Defendants have not asserted any alternative grounds for the Court's exercise of jurisdiction.

## 2. Defendants Are Not Debt Collectors Under the FDCPA

The Bostroms allege a violation of the Fair Debt Collection Practices Act ("FDCPA") on two grounds. Generally, the Bostroms allege that PNC Bank is "prohibited by federal law from proceeding with the non-judicial foreclosure of the Property in order to collect on its debt." Next, the Bostroms make two allegations in support of their FDCPA claim. First, they allege that PNC is not in possession of the original note, and thereby has no right to possession of the property. Second, the Bostroms allege that, because they have fulfilled their obligations under HAMP, PNC Bank has no "legal right or standing to foreclose on the property." The Bostroms contend that the FDCPA prohibits the conduct at issue here, because Defendants used "unfair or unconscionable means" to collect the debt owed to it, and the FDCPA also specifically prohibits nonjudicial action if there is no present right to possession of the property claimed as collateral through an enforceable security interest. The Bostroms claim that there is no right to foreclose because they continued to make the payments required of them by PNC Bank. Defendants argue that the FDCPA does not apply.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692. But the

**REPORT AND RECOMMENDATION - 10**

"activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA. *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D.Or.2002). And lenders and mortgage companies are not "debt collectors" within the meaning of the FDCPA. *Ines v. Countrywide Home Loans, Inc.*, Case No. 08cvl267 WQH (NLS), 2008 WL 2795875, *3 (S.D.Cal. July 18, 2008) (citing *Williams v. Countrywide*, 504 F.Supp.2d 176, 190 (S.D.Tex.2007) ("Mortgage companies collecting debts are not 'debt collectors.'")).

In this case, the Bostroms do not allege any facts in support of their allegations that any Defendant qualifies as a "debt collector," or that any Defendant engaged in "debt collection activity." According to the Complaint, National City Corporation is the lender, and PNC Bank is the lender's successor in interest due to merger. The Bostroms were informed where to send their payments, which were sent to the loan servicer, identified on the payment coupons and correspondence as National City Mortgage, a division of National City Bank, and also as "National City, Now a part of PNC." The lender, the lender's successor, and the servicer do not qualify as debt collectors under the FDCPA. *Caballero v. Ocwen Loan Serv.*, Case No. C–09–01021 RMW, 2009 WL 1528128, at *1 (N.D.Cal. May 29, 2009); *see also De Dios v. Internat'l Realty & Investments*, 641 F.3d 1071, 1074-75 and n.3 (9th Cir. 2011) (explaining that a debt collector does not include the creditor who originated the debt, or "mortgage service companies and others who service outstanding debts for others," if the debt was not in default at the time they acquired the servicing rights). Finally, Pioneer Title Company, as the trustee, has no

ownership interest in the Note and no claim can be stated against it under the FDCPA. Accordingly, any claim the Bostroms assert based on the FDCPA should be dismissed.

To the extent the Bostroms rely upon *Armacost v. HSBC Bank, USA*, 2011 WL 825151 (D. Idaho Feb. 9, 2011), their reliance is misplaced.[8] The Bostroms argue that the facts pled constitute a claim against PNC Bank under the FDCPA because the Bostroms paid their monthly payments and therefore the lender "has no present right to possession of the property." *Armacost* held that the FDCPA could conceivably encompass a claim against a lender seeking to foreclose under Section 1692f(6) of the FDCPA, which prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt," including the taking of nonjudicial action to effect dispossession of the property if there is no present right to possession. After *Armacost*, cases interpreting the FDCPA have held that loan servicers, lenders, mortgage companies, and trustees appointed pursuant to a deed of trust are not "debt collectors," a prerequisite for application of Section 1692f(6).

In addition, the facts pled in this matter do not indicate the Bostroms were current according to the terms of the Note and Deed of Trust. According to the September 3, 2009 Trial Period Notice, the Bostroms signed an acknowledgement that the terms of the Note and Deed of Trust would not be modified unless and until several conditions were satisfied, including receipt of a fully executed copy of a modification agreement. The Bostroms do not allege receiving or signing a modification agreement. The September 3

---

[8] At the time *Armacost* was decided, the Court did not have the benefit of the decision in *De Dios*, which was filed April 11, 2011. The holding by the Ninth Circuit Court of Appeals in *De Dios* is controlling.

**REPORT AND RECOMMENDATION - 12**

2009 Notice further indicated that any past due amounts at the end of the trial period, including unpaid interest, real estate taxes, insurance, or other assessments, would be added to the loan balance, not forgiven. And, the Deed of Trust expressly stated that acceptance by Lender of amounts less than the amounts due under the Note would not be deemed a waiver of or preclude the exercise of any right or remedy Lender was entitled to, which included nonjudicial foreclosure. The Bostroms allege only that they were current with respect to their trial period payments; however, they were informed expressly by the documents they signed that acceptance of less than the monthly payment amount would not result in forgiveness of the difference between the amount paid and the amount of their monthly payment. Further, the Deed of Trust stated that, in such a case, Lender's remedies were not waived. While the facts may eventually prove successful on another cause of action, the facts as pled do not comprise a claim under the FDCPA.

This leaves the Court without jurisdiction over the Bostrom's state law claims. The Court declines to exercise supplemental jurisdiction over the Bostrom's remaining state law claims pursuant to 28 U.S.C. §§ 1367(a) and 1441(c). As for the Bostrom's claims predicated on HAMP, they are not basing their claims upon HAMP's provisions, and have explained that they are not bringing this action to enforce Defendants' obligations under HAMP. (Pls.' Mem. at 11-13, Dkt. 14.) To the extent their state law claims are based upon acts taken pursuant to HAMP, such reliance is insufficient for the Court to retain jurisdiction. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675—76 (9th Cir. 2012) (remanding a matter for lack of jurisdiction when the complaint merely

**REPORT AND RECOMMENDATION - 13**

used federal statutes (the FDCPA and HAMP) as predicates for state law causes of action).[9]

## CONCLUSION

For the stated reasons, the Court recommends that this matter be remanded to the Fourth Judicial District court in Ada County, Idaho, for consideration of the state law claims remaining. Because the Court need not reach the arguments concerning the parties' state law claims, it did not consider Plaintiffs' Motion to Strike or Convert, as none of the disputed factual issues raised in the motion related to the claim under the FDCPA. Plaintiffs' motion to strike is therefore moot. Nor did the Court consider the bankruptcy pleadings attached to Plaintiffs' motion for judicial notice, rendering that motion moot as well.

---

[9] The Court is troubled, however, by the alleged facts in this case. PNC Bank allegedly accepted the Bostroms' modified monthly loan payment amount for nearly two years, from September of 2009, through June of 2011. According to the Complaint, PNC Bank representatives allegedly informed Mrs. Bostrom to disregard the March 2010 letter "stopping" the trial period plan, and the letter contained no explanation about what, if anything, was deficient with the documentation provided. (See Mot. Ex. 1, Dkt. 12-2.) PNC Bank allegedly waited until February of 2011, to provide the Bostroms with two very different letters offering new trial period plan payments, and it appears that the Bostroms could not comply with the terms because the due date for the new trial period plan payments had come and gone. However, those factual issues and their legal ramifications are for the state court to determine.

**REPORT AND RECOMMENDATION - 14**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Motion to Take Judicial Notice (Dkt. 15) be **DENIED as MOOT**.

2) Motion to Strike (Dkt. 13) be **DENIED as MOOT**.

3) Motion for Judgment on the Pleadings (Dkt. 12) be **GRANTED IN PART AND DENIED IN PART.**

4) That this matter be remanded to the Fourth District Court of the State of Idaho, in and for the County of Ada.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **August 17, 2012**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 15**